

<u>*VIA ELECTRONIC MAIL*</u>                                   September 2, 2021

Freedom of Information Act Request

Lance Purvis
Office of the Solicitor FOIA Office
U.S. Department of the Interior
MS-6540
1849 C Street, NW
Washington, DC 20240
sol.foia@sol.doi.gov

**Re: Records relating to Secretary Haaland's wedding, including potential attendance by prohibited sources and improperly reported gifts**

Dear FOIA Officer,

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* (FOIA), from the Protect the Public's Trust (PPT), a non-profit organization dedicated to promoting ethics in government and restoring the public's trust in government officials.

We are investigating allegations of potential ethics violations and influence peddling that may have occurred at the recent wedding of Secretary Deb Haaland. Senior government officials are required to carry out their duties in an objective, transparent and compliant manner. In the past, special interests have sought to circumvent rules and curry favor through impermissible <u>gifts</u>. Unfortunately, major events like a Cabinet official's wedding provide an opportune environment for otherwise "prohibited sources" to engage in such chicanery. It is the Constitutional obligation of senior Executive Branch leaders to avoid violations and comply with all relevant laws.

Secretary Haaland's Native American heritage has been a prominent aspect of her tenure at Interior. Yet as the head of a large federal agency charged with managing billions of dollars and numerous Trust responsibilities, and carrying out regulatory oversight of hundreds of Tribal governments, the Secretary may have placed herself in a compromising situation if she failed to consult with ethics officials every step of the way. The public deserves to know whether Secretary Haaland has improperly solicited or received gifts (through invitation or directly) from "prohibited sources" or foreign governments and to what extent she may have used government resources to do it.

Numerous other issues have also come to light in the wake of the announcement of the Secretary's wedding, which require an opportunity for the public to review relevant records.

1



**Records Requested**

Accordingly, PPT requests the following records from the Department of the Interior ("DOI" or "Interior")'s Office of the Solicitor:

1.  Meeting Requests: All records for meeting requests, meeting memos, briefing documents, schedules, communications, and any other records related to the planning or preparation for Secretary Haaland's wedding on August 28, 2021. This should include but not be limited to records and communications relating to meeting approvals from the Department Ethics Office/Office of the Solicitor, security detail planning and external/intergovernmental meetings regarding the event. Meetings that have been scheduled following the wedding to discuss gift disposition, and any other Interior-related issue that arose at the event should also be included.

2.  External and Internal Communications: Any and all communications, documents, and other records pertaining to the planning, attendance, security detail or other relevant conversation involving the Secretary's wedding. This includes, but should not be limited to, any records by the Secretary's security detail, purchase cards, travel itineraries, vouchers, authorizations, gift acceptance or disposition, scheduling office outreach or communication internally or with potential guests, Solicitor Office communications with the intergovernmental office and communications office records on the planning, travel, COVID-related guidance, and other responsive communications on the topic.

3.  Guest List: Any lists that exist of any planned invitees and/or attendees to the wedding and all communications between any of those persons and any Department employees from November 3, 2020, and the date of the wedding, August 28, 2021. This should include, but not be limited to, correspondence between Office of Secretary personnel and those in the Solicitor's Office, or between employees within the Solicitor's Office, including the ethics office, discussing invitations to individuals to ensure they were not considered a "prohibited source."

4.  Gifts: A list of all gifts and estimated dollar amounts that were accepted, declined, or donated by the Secretary, including the name and professional affiliation of the individual giving the gift. Also, any communications with, by and between ethics and solicitors officials concerning the legality of such acceptance of gifts. If no analysis was conducted, please provide records showing that the Ethics/Solicitor's Office determined that no analysis was needed to vet wedding gifts the Secretary received from guests.

5.  All records and communications concerning the preparation for and planning of a honeymoon following Secretary Haaland's wedding. This



should include communications between and with OS scheduling, advance, and security detail and other officials in the Office of the Secretary or with the Solicitor's Office, including the Ethics Office.

6.    Secretary Haaland's updated financial disclosure form 278 that includes all of her new spouse's financial information and interests that are imputed to her. We request all records between Secretary Haaland, her husband, and administrative staff with the Solicitor's Office and ethics officials to develop this updated document.

For this request, the term "all records" refers to, but is not limited to, any and all documents, correspondence, emails, text messages, letters, notes, telephone records, telephone notes, minutes, memoranda, comments, files, presentations, consultations, biological opinions, assessments, evaluations, schedules, telephone logs, digital logs such as those produced by Microsoft Teams, papers published and/or unpublished, reports, studies, photographs and other images, data (including raw data, GPS or GIS data, UTM, LiDAR, etc.), maps, and/or all other responsive records, in draft or final form.

This request is not meant to exclude any other request that, although not specifically requested, are reasonably related to the subject matter of this request. If you or your office have destroyed or determine to withhold any records that could be reasonably construed to be responsive to this request, I ask that you indicate this fact and the reasons therefore in your response.

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under the FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption. FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release. Please include a detailed ledger which includes:

1.    Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item; and

2.    Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and mail the non-exempt portions of such



records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

PPT is willing to receive records on a rolling basis.

These communications could be very relevant to ensuring that Secretary Haaland and her senior staff are acting consistently with their ethics and other legal obligations. In order to most efficiently facilitate our request, we request that the FOIA office use the email Enterprise Records and Document Management System (eERDMS) to search and process this request.

Finally, FOIA's "frequently requested record" provision was enacted as part of the 1996 Electronic Freedom of Information Act Amendments, and requires all federal agencies to give "reading room" treatment to any FOIA-processed records that, "because of the nature of their subject matter, the agency determines have become the subject of subsequent requests for substantially the same records." 5 U.S.C. § 552(a)(2)(D)(ii)(I). Also, enacted as part of the 2016 FOIA Improvement Act, FOIA's Rule of 3 requires all federal agencies to proactively "make available for public inspection in an electronic format" "copies of records, regardless of form or format ... that have been released to any person … and … that have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D)(ii)(I).  Therefore, we respectfully request that you make available online any records that the agency determines will become the subject of subsequent requests for substantially the same records, and records that have been requested three or more times.

**Format of Requested Records**

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. See, e.g., 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily accessible" means text-searchable and OCR-formatted. See 5 U.S.C. § 552(a)(3)(B). We ask that you please provide all records in an electronic format. Additionally, please provide the records either in (1) load-ready format with a .CSV file index or Excel spreadsheet, or; (2) for files that are in .PDF format, without any "portfolios" or "embedded files." Portfolios and embedded files within files are not readily accessible. Please do not provide the records in a single, or "batched," .PDF file. We appreciate the inclusion of an index.

If you should seek to withhold or redact any responsive records, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. § 552(b). Please correlate any redactions with specific exemptions under FOIA.



**Fee Waiver Request**

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as PPT access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ...." 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

I. PPT Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The Interior FOIA regulations at 43 C.F.R. § 2.48(a)(1)-(4) establish the same standard.

Thus, Interior must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. 43 C.F.R. § 2.48(a)(1)-(4). As shown below, PPT meets each of these factors.



### A. The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of Interior. This request asks for: Information pertaining to legal and ethics advice pertaining to the Secretary's recent wedding, including all relevant records within the Office of the Solicitor. Additional details are included in the above request.

### B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow PPT to convey to the public information about whether the highest-ranking official at the Department is acting consistently with all of the applicable laws, rules, and regulations. After disclosing the requesting records, PPT will inform the public about their findings in order to ensure decisions are being made consistent with the law. Once the information is made available, PPT will analyze it and present it to its followers and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of Interior operations and activities.

### C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the Secretary of the Interior's Conduct and Compliance with All Legal Obligations.

The requested records will contribute to public understanding of the official charged with managing America's public lands and natural resources. As explained above, the records will contribute to public understanding of this topic.

Gift rules and ethics obligations exist to reduce the likelihood that senior government officials are making decisions in a biased or arbitrary manner or to benefit the interests of former employers, clients, or related parties. Ensuring the avoidance of conflicts of interest or the appearance of bias is of interest to a reasonably broad segment of the public. PPT will use the information it obtains from the disclosed records to educate the public at large about whether the Secretary is adhering to all of her obligations, has established procedures to ensure compliance, and is committed to the ideals of transparency and public service that she has espoused. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological



conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through PPT's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which concern the Secretary's recent wedding, possible acceptance of impermissible gifts, and potential misuse of government resources for personal gain. We also are unaware of these records having been released to date. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005) (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations...."

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of how Secretary Haaland is conducting herself while in charge of a large federal agency. The public is always well served when it knows how the government conducts its activities, particularly matters touching on ethics and potential misconduct questions. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about whether Secretary Haaland is compliantly performing her Senate-confirmed duties.

### D. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

PPT is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the potential conflicts of interest and likelihood of an appearance of bias in decision-making as compared to the level of public understanding that exists prior to the disclosure. Indeed, public understanding will be significantly increased as a result of disclosure.



The records are also certain to shed light on Interior's compliance with its own mission and responsibility to protect our nation's natural resources and cultural heritage. Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, PPT meets this factor as well.

II. PPT has the Ability to Disseminate the Requested Information Broadly.

PPT is a non-profit organization that informs, educates, and counsels the public about the importance of government officials acting consistently with their ethics obligations. A key component of being able to fulfill this mission and educate the public about these duties is access to information that articulates what obligations exist for senior government officials. PPT intends to publish information from requested records on its website, distribute the records and expert analysis to its followers through social media channels including Twitter, Facebook, and other similar platforms. PPT also has a robust network of reporters, bloggers, and media publications interested in its content and that have durable relationships with the organization. PPT intends to use any or all of these far-reaching media outlets to share with the public information obtained as a result of this request.

Through these means, PPT will ensure: (1) that the information requested contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that PPT possesses the expertise to explain the requested information to the public; (4) that PPT possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes PPT as a reliable source in the field of government ethics and conduct.

Public oversight and enhanced understanding of Interior's duties is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney v U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994). PPT need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for PPT to show how it distributes information to the public generally. *Id*.

III. Obtaining the Requested Records is of No Commercial Interest to PPT.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to PPT's role of educating the general public. PPT operates as a nonprofit organization with supporters and members of the public who seek a transparent, ethical and impartial government that makes decisions in the best interests of all Americans, not former employers and special interests. PPT has no commercial interest and will realize no commercial benefit from the release of the requested records.



IV. Conclusion

For all of the foregoing reasons, PPT qualifies for a full fee waiver. We hope that the Department will immediately grant this fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

If you have any questions, please contact me at foia@protectpublicstrust.org. All records and any related correspondence should be sent to my attention at the address below.


Sincerely,


Morgan Yardis
Research and Publication Associate
foia@protectpublicstrust.org